FILED

2018 FEB 27 AM 10: 48

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WINSTON RAMKELAWAN and
VINDRA RAMKELAWAN,

    Plaintiffs,

v.

CASE NO.: 5:18 cv-100-OC-30PRL

GLOBUS MEDICAL, INC. and GLOBUS
MEDICAL NORTH AMERICA, INC.,

    Defendants.

## COMPLAINT

**COMES NOW** Plaintiffs, Winston Ramkelawan and Vindra Ramkelawan, by and through their undersigned counsel, to sue Defendants, Globus Medical, Inc. and Globus Medical North America, Inc., for the claims stated herein. In support thereof, Plaintiffs state as follows:

### THE PARTIES

1. Plaintiff, Winston Ramkelawan ("Mr. Ramkelawan"), is a Florida citizen and resident and was a Florida citizen and resident at all times material to this Complaint.

2. Plaintiff, Vindra Ramkelawan ("Mrs. Ramkelawan"), is a Florida citizen and resident and was a Florida citizen and resident at all times material to this Complaint.

3. Mr. Ramkelawan and Mrs. Ramkelawan are married as husband and wife.

4. Defendant, Globus Medical, Inc. ("Globus"), is a foreign corporation incorporated under the laws of Delaware. Globus maintains its principal place of business in Audubon, Pennsylvania. Globus is authorized by the Florida Department of State to do business in Florida.

Globus may be served with process through its in-state registered agent: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

5. Defendant, Globus Medical North America, Inc. ("Globus North America"), is a foreign corporation incorporated under the laws of Pennsylvania. Globus North America maintains its principal place of business in Audubon, Pennsylvania. Globus North America is authorized by the Florida Department of State to do business in Florida. Globus North America may be served with process through its in-state registered agent: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

6. Globus Medical is the parent company of Globus North America, and Globus North America is Globus Medical's wholly-owned subsidiary.

## FACTS

7. Globus is a medical device company that is engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing, and/or selling musculoskeletal implants and spinal products.

8. Globus North America is a medical device company that is engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing, and/or selling musculoskeletal implants and spinal products.

9. Globus and Globus North America designed, manufactured, assembled, tested, inspected, marketed, distributed, and/or sold the SECURE®-C Cervical Artificial Disc (the "SECURE-C").

10. The SECURE-C is an implantable artificial disc that is designed to be implanted into the cervical spine of qualifying patients who suffer from spinal cord injuries and diseases like intractable radiculopathy and myelopathy.

11. The SECURE-C is designed as an alternative to spinal fusion surgery with the intent that the SECURE-C will allow greater cervical mobility in patients who suffer from spinal cord injuries and diseases than spinal fusion surgery.

12. The SECURE-C is designed to consist of an ultra-high-molecular-weight polyethylene inner core fitted between two endplates made out of highly polished cobalt chromium molybdenum alloy. Both of the SECURE-C's endplates are coated with a medical grade titanium plasma spray.

13. The following images accurately depict the SECURE-C's general anatomy:



*Depiction of the SECURE-C*



*Depiction of the SECURE-C's Component Parts*

14. The SECURE-C's inferior (bottom) endplate is designed with two engagement recesses to anchor the SECURE-C's core between the two endplates. The inferior side of the SECURE-C's core is designed with two engagement features that fit into the two engagement recesses in the SECURE-C's inferior endplate.

15. The following images accurately depict the engagement recesses and engagement features described in the above paragraph:



*Depiction of the SECURE-C's Inferior Endplate with Arrows Pointing to Engagement Recesses*



*Depiction of the Inferior Side of the SECURE-C's Core with Arrows Pointing to Engagement Features*

Page 4 of 20

16. The SECURE-C is implanted into a patient's cervical spine as a single unit.

17. When implanted into a patient's cervical spine, the SECURE-C's two endplates are secured to the top and bottom surfaces of the involved cervical vertebrae.

18. The following image accurately depicts how the SECURE-C is designed to be positioned in a patient's cervical spine following implantation:



*Depiction of the SECURE-C After Implantation in Cervical Spine*

19. After implantation, the SECURE-C's two endplates articulate with the SECURE-C's core to allow motion within the patient's cervical spine. Specifically, the SECURE-C is designed to allow ±15° flexion-extension motion (bending the neck forward and backward), ±10° lateral bending motion (bending the neck toward the left and right shoulders), unconstrained axial rotation (turning the head left and right), and ±1.25mm translation (planar motion of the neck).

20. Globus and Globus North America intend or reasonably foresee that patients implanted with the SECURE-C will engage in ordinary everyday activities and movements, including, but not limited to, walking, standing, sitting, lying down, lifting, bending, and sleeping.

21. The SECURE-C's endplates are designed to be made out of highly polished cobalt chromium molybdenum alloy because this material is known in the medical device industry to be tolerated well by the human body and to be sufficiently durable to withstand the ordinary and expected forces and motions associated with movement in the cervical spine.

22. If the SECURE-C's endplates are not made out of highly polished cobalt chromium molybdenum alloy, the SECURE-C's core can expel from between the SECURE-C's endplates, resulting in injury to the patient's cervical spine.

23. The SECURE-C's core is designed to be made out of ultra-high-molecular-weight polyethylene because this material is known in the medical device industry to be tolerated well by the human body and to be sufficiently durable to withstand the ordinary and expected forces and motions associated with movement in the cervical spine.

24. If the SECURE-C's core is not made out of ultra-high-molecular-weight polyethylene, the SECURE-C's core can expel from between the SECURE-C's endplates, resulting in injury to the patient's cervical spine.

25. The SECURE-C's inferior endplate is designed to be made with engagement recesses and the SECURE-C's core is designed to be made with engagement features in order to lock the SECURE-C's core in place, thereby preventing an expulsion event where the SECURE-C's core is expelled from between the two endplates.

26. If the engagement recesses on the SECURE-C's inferior endplate are not manufactured properly, the SECURE-C's core can expel from between the SECURE-C's endplates, resulting in injury to the patient's cervical spine.

27. If the engagement features on the inferior side of the SECURE-C's core are not manufactured properly, the SECURE-C's core can expel from between the SECURE-C's endplates, resulting in injury to the patient's cervical spine.

28. On September 28, 2012, the U.S. Food and Drug Administration ("FDA") entered an order granting premarket approval for the SECURE-C under the Food, Drug, and Cosmetic Act, the effect of which allowed Globus and Globus North America to begin manufacturing the SECURE-C for commercial sale and distribution.

29. By receiving premarket approval for the SECURE-C, Globus and Globus North America are required by federal law to manufacture the SECURE-C pursuant to the design specifications approved by the FDA. These design specifications include, but are not limited to:

    a. Manufacturing the SECURE-C's endplates to be made out of highly polished cobalt chromium molybdenum alloy;

    b. Manufacturing the SECURE-C's core to be made out of ultra-high-molecular-weight polyethylene;

    c. Manufacturing the SECURE-C's inferior endplate with engagement recesses that fit with the engagement features on the inferior side of the SECURE-C's core; and

    d. Manufacturing the inferior side of the SECURE-C's core with engagement features that fit with the engagement recesses on the SECURE-C's inferior endplate.

30. On May 11, 2015, Mr. Ramkelawan underwent a surgical procedure to have a SECURE-C implanted into his cervical spine (the "Subject SECURE-C").

31. Mr. Ramkelawan's surgery was completed without complication and he was discharged from the hospital the same day.

32. In the morning of May 13, 2015, Mr. Ramkelawan was lying in bed when he heard a "pop" in his neck. Mr. Ramkelawan suddenly lost feeling in his body from his chest down.

33. Mr. Ramkelawan was immediately transported to a local hospital where it was determined that the Subject SECURE-C's core expelled from between the Subject SECURE-C's endplates, causing injury to Mr. Ramkelawan's spinal cord and rendering him quadriplegic.

34. Mr. Ramkelawan's injuries were caused by Globus's and Globus North America's substandard manufacture of the Subject SECURE-C. Specifically, the Subject SECURE-C was improperly manufactured in at least the following ways:

    a. The Subject SECURE-C's endplates were not made out of highly polished cobalt chromium molybdenum alloy or, in the alternative, were made of such inferior quality or contaminated cobalt chromium molybdenum alloy that the Subject SECURE-C's endplates were rendered incapable of withstanding the ordinary and expected forces and motions associated with movement in the cervical spine.

    b. The Subject SECURE-C's core was not made out of ultra-high-molecular-weight polyethylene or, in the alternative, was made out of such inferior quality or contaminated ultra-high-molecular-weight polyethylene that the Subject SECURE-C's core was rendered incapable of withstanding the

ordinary and expected forces and motions associated with movement in the cervical spine.

c. The Subject SECURE-C's inferior endplate was not manufactured with engagement recesses that met the design specifications approved by the FDA, in that the engagement recesses on the Subject SECURE-C's inferior endplate did not properly fit with the engagement features on the inferior side of the Subject SECURE-C's core.

d. The inferior side of the Subject SECURE-C's core was not manufactured with engagement features that met the design specifications approved by the FDA, in that the engagement features on the inferior side of the Subject SECURE-C's core did not properly fit with the engagement recesses on the Subject SECURE-C's inferior endplate.

35. As a result of Globus's and Globus North America's substandard manufacture of the Subject SECURE-C, the Subject SECURE-C was not manufactured according to the design specifications approved by the FDA.

36. Globus's and Globus North America's substandard manufacture of the Subject SECURE-C rendered the Subject SECURE-C defective and unreasonably dangerous beyond the contemplation and expectation of ordinary consumers, including Mr. Ramkelawan.

37. The risk of danger associated with manufacturing the Subject SECURE-C in the way that Globus and Globus North America manufactured the Subject SECURE-C outweigh any real or perceived benefits.

38. Globus and Globus North America's substandard manufacture of the Subject SECURE-C caused or contributed directly to cause Mr. Ramkelawan's injuries.

39. Had Globus and Globus North America not improperly manufactured the Subject SECURE-C, Mr. Ramkelawan's injuries would have been avoided or reduced.

40. At the time Globus and Globus North America placed the Subject SECURE-C into the stream of commerce, Globus and Globus North America knew or reasonably should have known that they improperly manufactured the Subject SECURE-C.

41. This is not the first time a SECURE-C device experienced an expulsion event that resulted in injury or death to the patient in which the device was implanted.

42. The FDA has been notified of other expulsion events relating to SECURE-C devices that caused injury or death to the patient in which the device was implanted.

43. The injuries and deaths referenced in Paragraph 42 of this Complaint were caused by Globus's and Globus North America's substandard manufacture of the SECURE-C devices at issue.

## JURISDICTION & VENUE

44. This is an action for damages in excess of $75,000, exclusive of interest, costs, and attorney's fees.

45. This Court is authorized to exercise personal jurisdiction over Globus pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Globus:

   a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

   b. Committing a tortious act within Florida; or

   c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury,

either (i) Globus was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Globus anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

46. This Court is authorized to exercise personal jurisdiction over Globus North America pursuant to the Florida Long-Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1), (1)(a)(2), and (1)(a)(6), because the claims stated herein arise out of Globus North America:

   a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in Florida;

   b. Committing a tortious act within Florida; or

   c. Causing injury to persons or property within Florida arising out of an act or omission committed outside Florida where, at or about the time of the injury, either (i) Globus North America was engaged in solicitation or service activities within Florida, or (ii) products, materials, or things processed, serviced, or manufactured by Globus North America anywhere were used or consumed in Florida in the ordinary course of commerce, trade, or use.

47. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims stated herein occurred in Marion County, Florida.

48. Venue is further proper in this Court pursuant to Local Rule 1.02(c) because the Ocala Division of this Court encompasses Marion County, Florida, which is the county having the greatest nexus to this action.

## CONDITIONS PRECEDENT

49. All conditions precedent have been satisfied or excused.

## COUNT I—STRICT LIABILITY
### (Winston Ramkelawan v. Globus Medical, Inc.)

50. Mr. Ramkelawan re-alleges and incorporates Paragraphs 1 through 49 of this Complaint as if fully stated herein.

51. This Count I states a claim for strict liability manufacturing defect arising under Florida law.

52. Florida law imposes a duty on manufacturers and sellers of a product to not manufacture or sell the product in a defective and unreasonably dangerous condition.

53. Globus manufactured, assembled, distributed, and/or sold the Subject SECURE-C.

54. Globus placed the Subject SECURE-C into the stream of commerce.

55. Globus intended for consumers to purchase or use the Subject SECURE-C.

56. Globus intended or reasonably foresaw that the Subject SECURE-C would be implanted in consumers like Mr. Ramkelawan.

57. The Subject SECURE-C is defective because the Subject SECURE-C's endplates were not made out of highly polished cobalt chromium molybdenum alloy or, in the alternative, were made of inferior quality or contaminated cobalt chromium molybdenum alloy.

58. The Subject SECURE-C is defective because the Subject SECURE-C's core was not made out of ultra-high-molecular-weight polyethylene or, in the alternative, was made out of inferior quality or contaminated ultra-high-molecular-weight polyethylene.

59. The Subject SECURE-C is defective because the Subject SECURE-C's inferior endplate was not manufactured with engagement recesses that properly fit with the engagement features on the inferior side of the Subject SECURE-C's core.

60. The Subject SECURE-C is defective because the inferior side of the Subject SECURE-C's core was not manufactured with engagement features that properly fit with the engagement recesses on the SECURE-C's inferior endplate.

61. All of the aforementioned manufacturing defects, whether individually or in combination, rendered the Subject SECURE-C defective and unreasonably dangerous for its intended or foreseeable use.

62. The Subject SECURE-C left Globus's possession and control with the manufacturing defects alleged herein, and the Subject SECURE-C remained in this defective and unreasonably dangerous condition up until and throughout the events giving rise to Mr. Ramkelawan's injuries.

63. The Subject SECURE-C's manufacturing defects, whether individually or in combination, actually and proximately caused injury and damage to Mr. Ramkelawan.

**WHEREFORE**, Plaintiff, Winston Ramkelawan, demands judgment against Defendant, Globus Medical, Inc., for all injuries and damages he suffered due to the Subject SECURE-C, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, costs, and interest, and any such further relief as the Court deems appropriate.

### COUNT II—NEGLIGENCE
### (Winston Ramkelawan v. Globus Medical, Inc.)

64. Mr. Ramkelawan re-alleges and incorporates Paragraphs 1 through 49 of this Complaint as if fully stated herein.

65. This Count II states a claim for negligence arising under Florida law.

66. Florida law imposes a duty on manufacturers and sellers of a product to exercise all reasonable care when manufacturing and selling the product.

67. Globus manufactured, distributed, and/or sold the Subject SECURE-C.

68. Globus placed the Subject SECURE-C into the stream of commerce.

69. Globus breached the duty of care imposed on it by Florida law when Globus manufactured the Subject SECURE-C's endplates without using highly polished cobalt chromium molybdenum alloy or, in the alternative, by manufacturing the Subject SECURE-C's endplates with inferior quality or contaminated cobalt chromium molybdenum alloy.

70. Globus breached the duty of care imposed on it by Florida law when Globus manufactured the Subject SECURE-C's core without using ultra-high-molecular-weight polyethylene or, in the alternative, by manufacturing the Subject SECURE-C's core with inferior quality or contaminated ultra-high-molecular-weight polyethylene.

71. Globus breached the duty of care imposed on it by Florida law when Globus manufactured the Subject SECURE-C's inferior endplate with engagement recesses that did not properly fit with the engagement features on the inferior side of the Subject SECURE-C's core.

72. Globus breached the duty of care imposed on it by Florida law when Globus manufactured the inferior side of the Subject SECURE-C's core with engagement features that did not properly fit with the engagement recesses on the Subject SECURE-C's inferior endplate.

73. By breaching the duty of care imposed on it by Florida law, Globus manufactured, distributed, and sold the Subject SECURE-C in a condition that rendered it defective and unreasonably dangerous for its intended or foreseeable use.

74. Globus knew or reasonably foresaw that the Subject SECURE-C would be used and implanted in consumers like Mr. Ramkelawan.

75. Globus knew or reasonably foresaw that using and implanting the Subject SECURE-C in a consumer like Mr. Ramkelawan would result in severe bodily injury, paralysis, or death.

76. By breaching the duty of care imposed on it by Florida law, Globus actually and proximately caused injury and damage to Mr. Ramkelawan.

**WHEREFORE**, Plaintiff, Winston Ramkelawan, demands judgment against Defendant, Globus Medical, Inc., for all injuries and damages he suffered due to the Subject SECURE-C, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, costs, and interest, and any such further relief as the Court deems appropriate.

### COUNT III—STRICT LIABILITY
### (Winston Ramkelawan v. Globus Medical North America, Inc.)

77. Mr. Ramkelawan re-alleges and incorporates Paragraphs 1 through 49 of this Complaint as if fully stated herein.

78. This Count III states a claim for strict liability manufacturing defect arising under Florida law.

79. Florida law imposes a duty on manufacturers and sellers of a product to not manufacture or sell the product in a defective and unreasonably dangerous condition.

80. Globus North America manufactured, assembled, distributed, and/or sold the Subject SECURE-C.

81. Globus North America placed the Subject SECURE-C into the stream of commerce.

82. Globus North America intended for consumers to purchase or use the Subject SECURE-C.

83. Globus North America intended or reasonably foresaw that the Subject SECURE-C would be implanted in consumers like Mr. Ramkelawan.

84. The Subject SECURE-C is defective because the Subject SECURE-C's endplates were not made out of highly polished cobalt chromium molybdenum alloy or, in the alternative, were made of inferior quality or contaminated cobalt chromium molybdenum alloy.

85. The Subject SECURE-C is defective because the Subject SECURE-C's core was not made out of ultra-high-molecular-weight polyethylene or, in the alternative, was made out of inferior or contaminated quality ultra-high-molecular-weight polyethylene.

86. The Subject SECURE-C is defective because the Subject SECURE-C's inferior endplate was not manufactured with engagement recesses that properly fit with the engagement features on the inferior side of the Subject SECURE-C's core.

87. The Subject SECURE-C is defective because the inferior side of the Subject SECURE-C's core was not manufactured with engagement features that properly fit with the engagement recesses on the SECURE-C's inferior endplate.

88. All of the aforementioned manufacturing defects, whether individually or in combination, rendered the Subject SECURE-C defective and unreasonably dangerous for its intended or foreseeable use.

89. The Subject SECURE-C left Globus North America's possession and control with the manufacturing defects alleged herein, and the Subject SECURE-C remained in this defective and unreasonably dangerous condition up until and throughout the events giving rise to Mr. Ramkelawan's injuries.

90. The Subject SECURE-C's manufacturing defects, whether individually or in combination, actually and proximately caused injury and damage to Mr. Ramkelawan.

WHEREFORE, Plaintiff, Winston Ramkelawan, demands judgment against Defendant, Globus Medical North America, Inc., for all injuries and damages he suffered due to the Subject SECURE-C, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, costs, and interest, and any such further relief as the Court deems appropriate.

### COUNT IV—NEGLIGENCE
**(Winston Ramkelawan v. Globus Medical North America, Inc.)**

91. Mr. Ramkelawan re-alleges and incorporates Paragraphs 1 through 49 of this Complaint as if fully stated herein.

92. This Count IV states a claim for negligence arising under Florida law.

93. Florida law imposes a duty on manufacturers and sellers of a product to exercise all reasonable care when manufacturing and selling the product.

94. Globus North America manufactured, distributed, and/or sold the Subject SECURE-C.

95. Globus North America placed the Subject SECURE-C into the stream of commerce.

96. Globus North America breached the duty of care imposed on it by Florida law when Globus North America manufactured the Subject SECURE-C's endplates without using highly polished cobalt chromium molybdenum alloy or, in the alternative, by manufacturing the Subject SECURE-C's endplates with inferior quality or contaminated cobalt chromium molybdenum alloy.

97. Globus North America breached the duty of care imposed on it by Florida law when Globus North America manufactured the Subject SECURE-C's core without using ultra-high-molecular-weight polyethylene or, in the alternative, by manufacturing the Subject

SECURE-C's core with inferior quality or contaminated ultra-high-molecular-weight polyethylene.

98. Globus North America breached the duty of care imposed on it by Florida law when Globus North America manufactured the Subject SECURE-C's inferior endplate with engagement recesses that did not properly fit with the engagement features on the inferior side of the Subject SECURE-C's core.

99. Globus North America breached the duty of care imposed on it by Florida law when Globus North America manufactured the inferior side of the Subject SECURE-C's core with engagement features that did not properly fit with the engagement recesses on the Subject SECURE-C's inferior endplate.

100. By breaching the duty of care imposed on it by Florida law, Globus North America manufactured, distributed, and sold the Subject SECURE-C in a condition that rendered it defective and unreasonably dangerous for its intended or foreseeable use.

101. Globus North America knew or reasonably foresaw that the Subject SECURE-C would be used and implanted in consumers like Mr. Ramkelawan.

102. Globus North America knew or reasonably foresaw that using and implanting the Subject SECURE-C in a consumer like Mr. Ramkelawan would result in severe bodily injury, paralysis, or death.

103. By breaching the duty of care imposed on it by Florida law, Globus North America actually and proximately caused injury and damage to Mr. Ramkelawan.

**WHEREFORE**, Plaintiff, Winston Ramkelawan, demands judgment against Defendant, Globus Medical North America, Inc., for all injuries and damages he suffered due to the Subject SECURE-C, whether already incurred or to be incurred in the future, including all actual damages,

consequential damages, economic damages, non-economic damages, punitive damages, costs, and interest, and any such further relief as the Court deems appropriate.

### COUNT V—LOSS OF CONSORTIUM
### (Vindra Ramkelawan v. All Defendants)

104. Mrs. Ramkelawan re-alleges and incorporates Paragraphs 1 through 49 of this Complaint as if fully stated herein.

105. This Count V states a claim for loss of consortium arising under Florida law.

106. At all times material hereto, Mrs. Ramkelawan was married to Mr. Ramkelawan, and Mrs. Ramkelawan remains married to Mr. Ramkelawan to this day.

107. Defendants are legally responsible for Mr. Ramkelawan's injuries and damages for the reasons stated in Counts I through IV of this Complaint.

108. Due to Defendants' liability-producing misconduct, Mrs. Ramkelawan lost, whether in whole or in part, the companionship, fellowship, company, cooperation, aid, love, affection, intimacy, sexual relationship, comfort, emotional support, solace, and society entitled to her because of her marriage to Mr. Ramkelawan.

109. Mrs. Ramkelawan experienced this loss of consortium from the moment Mr. Ramkelawan suffered injury due to Defendants' liability-producing misconduct, Mrs. Ramkelawan continues to experience this loss of consortium today, and Mrs. Ramkelawan will continue to experience this loss of consortium into the future.

110. Due to Defendants' liability-producing misconduct that caused Mr. Ramkelawan's injuries, Mrs. Ramkelawan has suffered and will continue to suffer mental anguish and emotional distress.

111. The aforementioned injuries and damages to Mrs. Ramkelawan were actually and proximately caused by Defendants' wrongful and negligent acts and omissions.

WHEREFORE, Plaintiff, Vindra Ramkelawan, demands judgment against Defendants, Globus Medical, Inc. and Globus Medical North America, Inc., for all injuries and damages she suffered resulting from the loss of consortium of her husband, Winston Ramkelawan, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, punitive damages, costs, and interest, and any such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, Winston Ramkelawan and Vindra Ramkelawan, demand a jury trial on all issues so triable.

Dated: February 27, 2018

Respectfully submitted,

/s/ *Andrew Parker Felix*
**ANDREW PARKER FELIX, ESQ.**
Florida Bar No.: 685607
**Morgan & Morgan, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 244-3204
Fax: (407) 245-3334
Primary Email: andrew@forthepeople.com
Secondary Email: KDimeglio@forthepeople.com