## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

WINSTON RAMKELAWAN and
VINDRA RAMKELAWAN, his wife

        Plaintiffs,

vs.                                    Case No.: 5:18 –cv-100-JSM-PRL
GLOBUS MEDICAL, INC. and GLOBUS
MEDICAL NORTH AMERICA, INC.

        Defendants

_____

### DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' PRE-SUIT COMMUNICATIONS AND DISCOVERY WITH THIRD PARTIES' COUNSEL RELATING TO TWO PRIOR LAWSUITS

Defendant, Globus Medical, Inc. and Globus Medical North America, Inc. (collectively, "Globus"), pursuant to Federal Rules of Civil Procedure 26(g) and 37(a) and Local Rule 3.04, respectfully moves this Court for entry of an Order compelling Plaintiffs to produce all documents in its possession, custody, or control responsive to Globus' First Request for Production ("RFP") #3, Globus Second RFP #3, 5 and 7, Globus Third RFP #5-10 and 15 and those documents in identified in Plaintiffs' 12/11/18 Privilege Log at #8-19. In support of this Motion, Globus respectfully refers the Court to the Memorandum of Law below.

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

## I.    INTRODUCTION

The Requests and Responses at issue relate to *pre-suit* communications and discovery between Plaintiffs' counsel and third parties' counsel relating to two prior medical malpractice and medical negligence lawsuits which settled.   In particular, Plaintiffs refuse to produce the Notices of Intent to Initiate Litigation and the corroborating expert reports which were shared with third parties' counsel.

## II.      STATEMENT OF FACTS

On May 11, 2015, Dr. Barry Kaplan ("Dr. Kaplan") performed a cervical disc replacement on Mr. Ramkelawan ("Plaintiff"), using the Globus Secure-C device at Marion Surgery Center ("Marion").  On May 13, 2015, the Secure-C was explanted.  Plaintiff's May 2015 surgeries and injuries he allegedly sustained as a result of those surgeries were the subject of three separate lawsuits.  The same law firm of Morgan & Morgan has represented Plaintiffs in all three lawsuits,   which claim damages for the same past and present injuries.

Plaintiffs first filed a medical malpractice action on April 20, 2017 against Dr. Kaplan, the Ocala Neurosurgical (Dr. Kaplan's practice) and Marion.  ("Kaplan Lawsuit") *See* Kaplan Complaint at Ex. A.[1] Prior to filing suit, Plaintiffs conducted a pre-suit investigation, which is described in Plaintiffs' 12/11/18 Privilege Log and the documents therein are the subject of this motion to compel.  *See* Privilege Log, as of 12/11/18, at #8-16, at Ex. B.

The Kaplan Complaint alleged that Dr. Kaplan and Marion were negligent in the care and treatment of Plaintiff and that they breached the standard of care by failing to ascertain that Plaintiff had instability in his cervical spine, making him an unsuitable candidate for the placement of the artificial disk, including by failing to perform flexion and extension x-rays

---

[1] Plaintiffs were represented by Herman More of Morgan & Morgan, an attorney with the same law firm and office as Plaintiffs' counsel in the instant suit.  Dr. Kaplan and Ocala Neurosurgical were represented by Beytin, McLaughlin, McLaughlin, O'Hara, Bocchino & Bolin.  Marion was represented by McCumber, Daniels, Buntz, Hartig & Puig, P.A.

prior to the implant procedure.  *See* Ex. A, Kaplan Complaint at 19 (a-b), 28 (a-b).  Plaintiffs alleged that Ocala Neurosurgical was vicariously liable for Dr. Kaplan's medical malpractice.[2] Vindra Ramkelawan also brought a loss of consortium claim.

An Answer was filed by Dr. Kaplan and Ocala Neurosurgical on 8/16/17 and some discovery was conducted.  On October 16, 2017, Plaintiffs signed a "Release and Indemnity Agreement," settling their claims against Dr. Kaplan and Ocala Neurosurgical.  On that same day, Plaintiffs signed a "Confidential Settlement Agreement and Release," settling their claims against Marion in exchange for payment made to Plaintiffs. While the Marion Settlement Agreement specifically refers to the "Notice of Intent to Initiate Litigation," it was not attached.

Two months after Plaintiffs settled the Kaplan Lawsuit, Plaintiffs filed a second suit against Life Care Centers of America, Inc. d/b/a the Life Care Center of Ocala ("Life Care") on December 15, 2017.[3]  ("Life Care Lawsuit") *See* Life Care Complaint at Ex.  C. Plaintiff received treatment at Life Care, which is  a nursing home facility, after the May 2015 surgeries from June 23, 2015 until July 19, 2015.  Plaintiffs were again represented by Herman More. Life Care was represented by Ullman Bursa Law.

Prior to filing the Life Care suit, Plaintiffs conducted a pre-suit investigation. Plaintiffs' 12/11/8 Privilege Log describes the pre-suit investigation and the documents therein are the subject of this motion to compel. *See* Ex. B, Privilege Log as of December 11, 2018 at

---

[2] Plaintiffs claimed the following damages against Ocala Neurosurgical, "medical expenses, rehabilitation expenses, hospital expenses, doctors expenses, loss of income, loss of earning capacity, physical pain, physical injury, neurological injury, paralysis, mental pain and suffering, mental anguish, loss of future earning capacity, decreased capacity for the enjoyment of life – in the past, present and future as defined in Fla. Statutes 766.118." *Id.* at 23a.

[3] Plaintiffs' verified answers to Globus' Interrogatories requesting information on any lawsuit they may have filed for any past or present illness or injury, failed to disclose this lawsuit, which involves the same injuries and damages they claimed in the Kaplan and current lawsuit. Plaintiffs only amended their responses when Globus became aware of this lawsuit in October 2018 by other means and demanded an explanation for their failure to disclose.

entries #17-19. The Life Care Complaint alleged that Life Care breached its duty of care in failing to prevent and then treat Mr. Ramkelawan's pressure sores, infections and pain while he was at Life Care.  Life Care Compl. at 13 (a)-(k).  Plaintiff claimed damages were the same as those alleged in the Kaplan Lawsuit.[4]  Vindra also brought a loss of consortium claim.  An Answer was filed by Life Care on 1/26/18 and Plaintiffs' depositions were taken on 5/3/18. Plaintiffs have produced the deposition transcripts. On July 18, 2018, Plaintiffs signed a "Settlement Agreement and General Release," settling their claims against Life Care.

Plaintiffs filed the instant lawsuit against Globus on February 28, 2018.  Plaintiff now claims that his injuries resulted, not from the negligence of the healthcare providers in failing to ascertain that Plaintiff had instability in his cervical spine which made him an unsuitable candidate for an artificial disc replacement, but instead because the subject medical device was defectively manufactured.  Plaintiffs damages in the instant case include the same injuries claimed in the Kaplan and Life Care Lawsuits.[5]

**III.    DISCOVERY AND MEET AND CONFERS**

Globus served its First RFP and First Interrogatories on June 29, 2018.  Plaintiffs responded on 7/17/18 and provided a Privilege Log on 7/30/18, which contained just nine

---

[4] Plaintiff claimed that as a result of Life Care's lack of care, he suffered, "bodily injury, pain and suffering of both a physical and mental nature, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, aggravation of an existing condition, expense of hospitalization, medical and nursing care and treatment, and loss of ability to lead and enjoy a normal life. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future." *Id.* at 14-15.

[5] Plaintiffs' Initial Disclosures state that: "As of March 21, 2018, Winston Ramkelawan has incurred $2,927,910.90 in known medical, treatment, and healthcare related expenses." Plaintiffs produced a Florida Blue Cross Blue Shield summary of medical expenses totaling $2,927,910,which includes the medical expenses incurred during Mr. Ramkelawan's stay at Life Care and his medical expenses thereafter through March of 2018. (RAMK MB1-380) In response to Globus' Interrogatory #12, Plaintiffs specifically identify the Florida Blue summary as providing a current estimate of his medical and hospital expenses.

entries.  *See* 7/30/18 Privilege Log, at Ex. D.[6]  After several meet and confers by letter and phone, Plaintiffs provided four supplemental productions in response to Globus' First RFP on 9/7/18, 9/21/18, 10/25/18 and 11/16/18. The 10/25/18 production included Dr. Kaplan's pre-suit deposition. Globus served its Second RFP on 8/2/18.  Plaintiffs responded on 9/13/18 and provided a revised Privilege Log, which included ten entries. While the first seven entries were included on the 7/30/18 Privilege Log, three entries were added.[7]

Globus served its Third RFP on 11/11/18.  Plaintiffs amended their responses to Globus' Interrogatories on 11/16/18.  On December 11, 2018, after several meet and confers between counsel by letter and phone, Plaintiffs amended their responses to Globus' First and Second RFP, responded to Globus' Third RFP and produced a revised Privilege Log as of that same date.   The 12/11/18 Privilege Log contains nineteen (19) entries.  Entries #8 through 19 are new entries, which Plaintiffs claim are responsive to Globus' First RFP #3, 6, 13 17, 18, 21, 22, 28, Globus' Second RFP #3, 4, 5, 6, 7, 8 and Globus' Third RFP# 1, 9, 12, 13, 14, 15, 16.

*For the first time*, Plaintiffs included a claim of privilege under three Florida Statutes §§766.106(5), 766.205(4) and 400.0233(5). While the documents described in entries #8-11

---

[6] Entry #8 identified a "Case File" as being responsive to Globus' First RFP #1, 2, 3, 8, 15, 16, 18, 22 and Winston Interrogatory #13.  The Case File contained "attorney notes and documents," dated from 3/15/2017 to that present date of 7/30/18, authored and received by Morgan and Morgan, claiming attorney-client privilege and work product doctrine. This entry is no longer included on the Privilege Log as of 12/11/18.

[7] Entries #1 and #2 from the 7/30/18 Privilege Log were removed because Plaintiffs agreed to produce the documents and CT scans described.  Entries 8, 9 and 10 were added and identified "Settlement Agreements and Releases" between Plaintiffs and Third Parties, "Drafts and Revisions" of those settlement agreements and releases and "Communication" between Plaintiffs' attorneys and third parties' attorneys about the settlement agreements and releases, as responsive to Globus' Second RFP #2, 4, 6 and 8.  *See* 9/13/18 Privilege Log, at Ex. E.  The dates, authors and recipients of those documents were not provided but instead were identified as "confidential" and the privilege claimed for all three entries was "confidential."

and 17 were created by or shared with third parties' counsel, Plaintiffs also claim that those documents are protected under the work product doctrine. By letter, dated February 12, 2019, Globus addressed Plaintiffs' discovery deficiencies and in particular Plaintiffs refusal to produce the presuit communications and documents identified on Plaintiffs' 12/11/18 Privilege Log #8-19. *See* Ex. F, Globus' letter dated February 12, 2019. On February 20, 2019, during a meet and confer call, Plaintiffs' counsel continued to refuse to produce the pre-suit communications and documents exchanged with third parties' counsel relating to the medical malpractice and negligence cases.

## IV.    THE REQUESTS AND RESPONSES AT ISSUE.

In compliance with Local Rule 3.04, the requests to which this Motion is addressed, Plaintiffs' responses, and a statement of the reasons this Motion should be granted are set forth below.

### A.    Privilege Log Entries Related to Kaplan Lawsuit.

**12/11/18 Privilege Log Entry #8:** Affidavit and Expert CV, 8/31/16, Statutory Affidavit Containing Medical Expert Opinion and CV of Expert Rendering the Opinion, from Neurosurgical Expert witness to Plaintiffs' counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry # 9:** Correspondence and Pre-Suit Discovery Requests, 9/28/16, Statutory Notice of Intent to Initiate Litigation for Medical Malpractice Directed to Dr. Kaplan and Pre-Suit Discovery Requests Directed to Dr. Kaplan, from Plaintiffs' counsel to Marion's attorney. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #10:** Correspondence and Pre-Suit Discovery Requests, 9/28/16, Statutory Notice of Intent to Initiate Litigation for Medical Malpractice Directed to Ocala Neurosurgical and Pre-Suit Discovery Requests Directed to Ocala Neurosurgical, from Plaintiffs' counsel to Marion's attorney. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #11:** Correspondence and Pre-Suit Discovery Requests, 9/28/16, Statutory Notice of Intent to Initiate Litigation for Medical Malpractice Directed to Marion and Pre-Suit Discovery Requests Directed to Marion, from Plaintiffs' counsel to

Marion's attorney. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #12:** Correspondence and Pre-Suit Discovery Requests, 10/18/16, Discussion of Pre-suit Discovery and Pre-Suit Interrogatories and Requests for Production Directed to Winston Ramkelawan, discussion between Plaintiffs' counsel and Marion's attorney Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #13:** Correspondence, 10/31/16, Discussion of Pre-Suit Discovery, between Plaintiffs' counsel and Dr. Kaplan and Ocala Neurosurgical's counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #14:** Correspondence and Responses to Pre-suit Discovery, 11/1/16, Discussion of Pre-Suit Investigation Conducted by Dr. Kaplan, Ocala Neurosurgical and Marion and Responses and Objections to Pre-suit Requests for Information and Documents, between Plaintiffs' counsel and Marion's attorney. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #15:** Correspondence, 1/6/17, Discussion of Results of Pre-suit Investigation Conducted by Dr. Kaplan, Ocala Neurosurgical and Marion, between Marion's attorney and Plaintiffs' counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

**12/11/18 Privilege Log Entry #16:** Deposition Transcript, 1/13/17, Transcript of Deposition of Dr. Barry J. Kaplan, from court reporter to Plaintiffs' counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §§766.106(5), 766.205(4).

### B.   Requests Related to Kaplan Lawsuit.

**Second RFP #3:** Please produce copies of all documents and communications exchanged between you and Dr. Barry J. Kaplan, his attorney or any representative on his behalf relating to the facts, circumstances or injuries alleged in the Plaintiffs' Second Amended Complaint.

**Plaintiffs' 9/13/18 Initial Response:** Plaintiffs have no documents or items in their possession that are responsive to this request.

**Plaintiffs' 12/11/18 Amended Response: OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §§766.106(5) and 766.205(4), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence. **RESPONSE:** To the extent this request does not seek production of documents and items that are privileged and not

discoverable, Plaintiffs state they are in possession of no documents or items that are responsive to this request.

**Second RFP #5 and #7:** Please produce copies of all documents and communications exchanged between you and [Ocala Neurosurgical Center, PA; Marion Surgery Center] their attorney or any representative on their behalf relating to the facts, circumstances or injuries alleged in the Plaintiffs' Second Amended Complaint.

**Plaintiffs' 9/13/18 Initial Response:** Plaintiffs have no documents or items in their possession that are responsive to this request.

**Plaintiffs' 12/11/18 Amended Response: OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §§766.106(5) and 766.205(4), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence. **RESPONSE:** To the extent this request does not seek production of documents and items that are privileged and not discoverable, and subject to Plaintiffs' objections based on relevance, Plaintiffs produce discovery documents exchanged between the parties during formal discovery in the "Kaplan Lawsuit" and other non-privileged documents relating to the resolution of the "Kaplan Lawsuit," which Plaintiffs believe may be responsive to this request.

## C.    Privilege Log Entries Related to Life Care Lawsuit.

**12/11/18 Privilege Log Entry #17:** Correspondence and Pre-Suit Discovery Requests, 8/2/17, Statutory Notice of Intent to Initiate Litigation for Nursing Home Negligence Directed to Life Care and Pre- Suit Discovery Requests Directed to Life Care, from Plaintiffs' counsel to Life Care's counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §400.0233(5).

**12/11/18 Privilege Log Entry #18:** Correspondence and Responses to Pre-Suit Discovery, 9/22/17, Discussion of Pre-Suit Discovery and Responses to Pre-Suit Discovery Requests Directed to Life Care, from Life Care's counsel to Plaintiffs' counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §400.0233(5).

**12/11/18 Privilege Log Entry #19:** Correspondence and Pre-Suit Discovery Requests, 10/4/17, Discussion of Pre-Suit Discovery and Pre-Suit Requests for Information Directed to Winston Ramkelawan, from Life Care's counsel to Plaintiffs' counsel. Privilege claimed: Work Product Doctrine; Fla. Stat. §400.0233(5).

## D.    Requests Related to Life Care Lawsuit.

**Third RFP #5:** Copies of all documents and communications exchanged between you and Life Care Centers of America, Inc. and Life Care Center of Ocala, their attorneys or any representatives acting on their behalf including, but not limited to, those relating to the facts, circumstances, injuries or damages alleged in the "Life Care Lawsuit."

**Plaintiffs' Response:  OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §400.0233(5), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds that it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence.  **RESPONSE:** To the extent this request does not seek production of documents and items that are privileged and not discoverable, Plaintiffs produce discovery documents that were exchanged between the parties during formal discovery in the "Life Care Lawsuit."

**Third RFP #7:** A copy of all documents and communications, which reflect the pre-suit investigation that was completed by Plaintiffs counsel to corroborate the validity of Plaintiffs' claims made in the Life Care Lawsuit and as referenced in the Life Care Lawsuit Complaint.

**Plaintiffs' Response:** Plaintiffs object to this request on the ground that it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §400.0233(5), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence.

**Third RFP #8:** A copy of the "Notice of Intent to Initiate Litigation For Violation of Nursing Home Resident's Rights Negligence and/or Deviation From The Standards of Care" referenced in the Life Care Lawsuit Complaint.

**Plaintiffs' Response:** Plaintiffs object to this request on the ground that it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §400.0233(5), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence.

**Third RFP #9:** Copies of all deposition transcripts and videotapes of all depositions taken of Vindra and Winston Ramkelawan, or any other person or corporate representative, since October of 2014 to the present time, relating to any injuries or damages Mr. Ramkelawan claims he has sustained as a result of his October 2014 motor vehicle accident, the May 2015 surgeries or his care and treatment.

**Plaintiffs' Response: OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §§766.106(5) and 766.205(4), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery

of admissible evidence. **RESPONSE:** To the extent this request does not seek production of documents and items that are privileged and not discoverable, and subject to Plaintiffs' objections based on relevance, Plaintiffs produce the deposition transcripts of Winston Ramkelawan and Vindra Ramkelawan taken during formal discovery in the "Life Care Lawsuit."

**Third RFP #10:** Copies of all deposition transcripts and videotapes of all depositions taken of any person, entity or corporate representative, whether taken pre-suit or after suit began, in the Life Care Lawsuit.

**Plaintiffs' Response: OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and §400.0233(5), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence. **RESPONSE:** To the extent this request does not seek the production of documents and items that are privileged and not discoverable, and subject to Plaintiffs' objections based on relevance, Plaintiffs produce the deposition transcripts of Winston Ramkelawan and Vindra Ramkelawan taken during formal discovery in the "Life Care Lawsuit."

E. **Requests Directed to October 2014 Car Accident, Kaplan Lawsuit and Life Care Lawsuit.**

**First RFP #3**: All documents relating to or referring to the motor vehicle accident in which you Plaintiff Winston Ramkelawan was involved which occurred *prior* to the May 2015, that resulted in his seeking treatment from Dr. Barry J. Kaplan

**Plaintiffs' Response: OBJECTION:** Plaintiffs object to this request in part to the extent the request is vague, ambiguous, overly broad, and unduly burdensome. Plaintiffs further object to the extent this request could be construed as seeking documents, items, and communications protected by the attorney-client privilege and work product doctrine. See privilege log. As phrased, Plaintiffs are not certain what documents Defendants are seeking through this request. **RESPONSE:** To the extent Defendants do not request objectionable or privileged materials, Plaintiffs reasonably interpret this request as seeking copies of the accident report and Winston Ramkelawan's medical records relating to the October 7, 2014 motor vehicle accident in which Mr. Ramkelawan was involved. Plaintiffs produce these documents as follows: Accident Report:   RAMK_MSC000001   through   RAMK_MSC0000004,   Medical   Records: RAMK_MR000001 through RAMK_MR000187.

**Third RFP #15:** Copies of any and all statements of any and all witnesses, including but not limited to any statements from the Plaintiffs, relating in any way to the October 2014 Motor Vehicle accident or the allegations in the Life Care Lawsuit or the Kaplan Lawsuit.

**Plaintiffs' Response: OBJECTION:** Plaintiffs object to this request in part to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney-client privilege, the attorney work product doctrine, and §400.0233(5), 766.106(5) and 766.205(4), Florida Statutes. See Privilege Log. Plaintiffs further object to this request on the grounds it seeks documents and items that are not relevant to any claim, issue, or defense and is not narrowly tailored to lead to the discovery of admissible evidence. **RESPONSE:** To the extent this request does not seek production of documents and items that are privileged and not discoverable, and subject to Plaintiffs' objections based on relevance, Plaintiffs produce the deposition transcripts of Winston Ramkelawan and Vindra Ramkelawan and discovery documents exchanged between the parties during formal discovery in the "Life Care Lawsuit" and the "Kaplan Lawsuit."

## V.     REASON MOTION SHOULD BE GRANTED.

Plaintiffs' response to all of the foregoing requests was basically the same. They objected "to the extent it requests documents and items that are privileged and not discoverable pursuant to the attorney work product doctrine and Florida Statutes §§400.0233(5), 766.106(5) and 766.205(4)" and they refer to their Privilege Log. Plaintiffs further objected to these requests on the grounds that they seek documents and items that are not relevant to any claim, issue, or defense and are not narrowly tailored to lead to the discovery of admissible evidence.

Plaintiffs' pre-suit communications with third parties' counsel are not protected from discovery under Florida Statutes §§766.106(5),[8] 766.205(4)[9] and 400.0233(5).[10] Those

---

[8] Florida Statute §766.106, **"Notice before filing action for medical negligence; presuit screening period; offers for admission of liability and for arbitration; informal discovery; review**," states in relevant part at 5: "Discovery and admissibility.--A statement, discussion, written document, report, or other work product generated by the presuit screening process is not discoverable or admissible in any civil action for any purpose *by the opposing party*…" (emphasis added)

[9] Florida Statute §766.205(4) **"Pre-suit discovery of medical negligence claims and defenses"** states in relevant part at 4, "No statement, discussion, written document, report, or other work product generated solely by the presuit investigation process is discoverable or admissible in any civil action for any purpose *by the opposing party*. .." (emphasis added)

[10] Florida Statute §400.0233 relates to nursing homes and related facilities: **"Pre-suit notice; investigation; notification of violation of resident's rights or alleged negligence; claims evaluation**

---

11

statutes only apply to the "opposing parties," who were involved in the pre-suit process of either a medical malpractice or medical negligence lawsuit.  Globus was not an "opposing party," in either the pre-suit process nor in the filed litigations, involving Dr. Kaplan, Ocala Neurosurgical, Marion and Life Care.  Therefore, the statutes do not apply to Globus and those pre-suit communications are discoverable.  To the extent that a statutory privilege applies, Plaintiffs waived that privilege by their voluntary production of Dr. Kaplan's pre-suit deposition.

Second, the work product doctrine does not shield from discovery documents created by or shared with third parties.  Third, the pre-suit communications and discovery are relevant to Globus' affirmative defenses of comparative negligence/fault.  Finally, the pre-suit communications and discovery may contain information that is relevant to prove bias, prejudice and state of mind. The foregoing bases for production are discussed at length below.

## VI.    LEGAL ARGUMENT

### A.    General Discovery Standards.

"The overall purpose of discovery under the Federal Rules is to require the disclosure of **_all_** relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of *the true facts*, and therefore embody a fair and just result."  *Hunter's Ridge Golf Co., Inc. v. Georgia-Pac. Corp.*, 233 F.R.D. 678, 680 (M.D. Fla. 2006) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)) (emphasis added); *see also Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th

---

**procedure; informal discovery; review; settlement offer; mediation"** and states in relevant part at 5: "No statement, discussion, written document, report, or other work product generated by presuit claims evaluation procedures under this section is discoverable or admissible in any civil action for any purpose *by the opposing party*… The pre-suit opinions of the expert are not discoverable or admissible in any civil action for any purpose *by the opposing party*." (emphasis added)

Cir.1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible.").

The scope of discovery under Rule 26(b) is broad and includes "discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action." *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Gonzalez v. ETourandTravel, Inc.*, 2014 WL 1250034, at *2 (M.D. Fla. 2014) (applying *Hickman* scope of discovery to Rule 34 requests for documents). "Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013).

Pursuant to Rule 34(b)(2)(A), Federal Rules of Civil Procedure, if the party to whom a document request is directed has grounds to object to the discovery request, that party must respond in writing within 30 days after being served and must assert any specific objections that the party has to the particular request at that time. "Absent compelling circumstances, failure to assert an objection to a request for production within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel.  Objections to requests for production should be specific, not generalized, and should be in compliance with the provisions of Rule 34(b), Federal Rules."  Middle District Discovery (2015) at 12.

Pursuant to the Federal Rules, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The obvious and overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore

embody a fair and just result." *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, 2014 U.S. Dist. LEXIS 5634, at *7 (M.D. Fla. Jan. 16, 2014) (internal quotation marks and citations omitted). "Furthermore, discovery in this district should be practiced with a spirit of cooperation and civility." *Hancock Bank v. Hill St. L.L.C.*, No. 13-cv-71-J-25, 2013 U.S. Dist. LEXIS 151506, at *3-4 (M.D. Fla. Oct. 22, 2013) (quoting Middle District Discovery (2001) at 1) (internal quotation marks omitted).

The Federal Rules authorize a party to file a motion to compel when another party fails to make disclosures pursuant to Rule 26(a)(1) or in response to document requests issued pursuant to Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(A); Fed. R. Civ. P. 37(a)(3)(B)(iv). "The party resisting discovery carries the burden to show specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Bonutti*, *supra.* at *7-8 (citing Fed. R. Civ. P. 33(b)(4); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550 (11th Cir. 1985); *Gober v. City of Lessburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000)).

**B.**     **Pre-Suit Communications With Third Parties' Counsel Relating to Prior Medical Malpractice and Negligence Lawsuits Are Discoverable.**

Most of Plaintiffs' privilege log entries describe the communications and documents withheld as "pre-suit" communications. *See* Privilege Log entries 8-19.   Those communications and documents are not protected by Florida Statute §§766.106(5), 766.205(4) or 400.0233(5). The pre-suit communications and discovery between Plaintiffs and third parties' counsel in the Kaplan and Life Care Lawsuits, including Dr. Kaplan's deposition, and especially statements made by Plaintiffs and/or their representatives (such as their counsel and/or the experts hired to corroborate Plaintiffs' theories), are relevant to Globus's comparative negligence/comparative fault affirmative defenses. Pursuant to Rule 26(b)(1) of

the Federal Rules of Civil Procedure, Globus is entitled to obtain those communications and they should be produced.

> 1. **Pre-Suit Communications Relating to the Kaplan Medical Malpractice Lawsuit or the Life Care Medical Negligence Lawsuit are Not Protected from Discovery by Florida Statute.**

Plaintiffs' reliance, upon Florida Statutes to protect pre-suit communications and documents relating to the Kaplan and Life Care Lawsuits, is misplaced.  First, Florida Statutes §§766.106(5) and 766.205(4) address pre-suit discovery of medical malpractice claims. Section 400.0233(5) addresses pre-suit discovery of nursing homes and related facilities medical negligence claims.

All three statutes protect the discovery and admissibility of pre-suit communications "in any civil action for any purpose *by the opposing party*." (emphasis added). By their plain language, the protection is limited by the use of the term "by the opposing party," which refers only to the medical negligence or medical malpractice defendant and the plaintiff.

The pre-suit communications at issue here were prepared for use in two separate matters in which Globus was not an "opposing party," either in the pre-suit process nor in the filed litigation. One was a separate medical malpractice case in which Dr. Kaplan, Ocala Neurosurgical and Marion Surgery were the opposing parties to Plaintiffs. The other was a separate medical negligence case in which Life Care was an opposing party to Plaintiffs. Therefore, to the extent that Plaintiffs or those opposing parties would attempt to obtain or use the pre-suit communications and discovery against each other in litigation in which they were named as *opposing parties*, those statutes would apply. Since Globus was not an "opposing party" in either matter, the protection afforded by all three statutes would not apply to Globus.

In addition, the foregoing Florida statutes simply do not apply to Globus because the pre-suit communications and documents were prepared for use in two *different* lawsuits, not in the pending litigation against Globus. *See Adventist Health Sys./Sunbelt, Inc.v. Watkins*, 675 So. 2d 1051 (Fla. 5th DCA 1996). In *Adventist Health,* the Florida Fifth District Court of Appeals rejected an expansive reading of §766.106(5), finding that the limitations on the discovery and use of pre-suit materials by an "opposing party" did not bar an adversary in a different case from discovering and using that evidence. *Id*. The Court held that the legislative intent in promoting settlement between the parties is not served by affording protections to pre-suit materials in a later action. *Id*. at 1052.  Instead, the court concluded that the legislature intended to limit application of the privilege in §766.106(5) to the medical malpractice parties alone.  The same rationale applies here and the prohibition to the production, use and admissibility of communications and information exchanged during the pre-suit process of the Kaplan and Life Care Lawsuits does not apply to Globus.

Second, Plaintiffs have the burden of proving the existence of a privilege.  *See United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991)* (party asserting the attorney client privilege has the burden of proving the existence of the privilege.)  Plaintiffs have simply asserted that a statutory privilege applies. This is not sufficient to satisfy their burden of proof.

Third, the legislative intent of Chapter 766 and 400 in promoting settlement between the parties is not served by affording protection to the pre-suit communications between Plaintiffs and third parties' counsel.  The documents at issue here concern completed settlements, not ongoing negotiations.  Therefore, the discovery of pre-suit communications related to lawsuits which have been dismissed will have no chilling effect on the settling parties and will even the playing field for Globus. S*ee e.g. United States v. American Society of*

*Composers,* No. Civ. 13-95 (MHD), 1996 WL 157523, at *3 (S.D.N.Y. April 3, 1996) ("Of particular pertinence to this case is the distinction between disclosure of negotiations that have led to a consummated settlement and the disclosure of discussions that are either ongoing or at least have not yet resulted in agreement.")

Fourth, Florida Statute §766.203(4) states specifically that medical expert opinions required by the Florida pre-suit statutes are subject to discovery.[11] In a medical malpractice action, the purpose of the pre-suit notice and the requirement of an expert's affidavit to corroborate the claim is to demonstrate that the claim is legitimate and to prevent the filing of baseless claims. *See DeCristo v. Columbia Hosp. Palm Beaches, Ltd.*, App. 4 Dist., 896 So.2d 909 (2005). The same is true for medical negligence claims brought against nursing facilities. Plaintiffs Privilege Log includes Plaintiffs' Notice of Intent to Initiate Litigation against Dr. Kaplan, Ocala Neurosurgical and Marion as well as a separate Notice of Intent against Life Care. Both included separate expert affidavits in support, which would have been shared with third parties' counsel. Pursuant to Florida Statute, those expert affidavits are subject to discovery.

Further, Plaintiffs' recent position that the pre-suit documentation should be protected against discovery is undermined by the fact that Plaintiffs did not initially raise the Florida pre-suit statutes as an objection, they did not include these documents in a privilege log, and they in fact voluntarily produced Dr. Kaplan's deposition transcript, which was clearly marked as

---

[11] Fla. Stat. §766.203 **"Presuit investigation of medical negligence claims and defenses by prospective parties"** states at (4) **Presuit medical expert opinion.--**The medical expert opinions required by this section are subject to discovery. The opinions shall specify whether any previous opinion by the same medical expert has been disqualified and if so the name of the court and the case number in which the ruling was issued.

"presuit."  Plaintiffs apparently believed that Dr. Kaplan's deposition was not only responsive to Globus' discovery requests but may be helpful to use offensively against Globus in the instant case.

The general principles of privilege waiver require that Plaintiffs should not be able to selectively use pre-suit documentation as a sword and shield. *See e.g. Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) ("The subject matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege."). Having voluntarily produced the allegedly protected material as relevant and responsive to Globus' discovery requests, Globus is entitled to discover the remaining withheld pre-suit documents.

> **2.    Plaintiffs Failed to Timely Raise the Statutory Objections and Waived Any Privilege That May Have Applied to the Pre-suit Communications and Discovery.**

Plaintiffs claim, that their voluntary production of Dr. Kaplan's deposition was "inadvertent," is unsupported by the record.  In addition, Plaintiffs failed to raise the statutory objections in a timely manner and reasonable steps were not taken by Plaintiffs to either prevent disclosure or to rectify the purported error once Plaintiffs were specifically made aware of the disclosure by Globus' counsel. Finally, Plaintiffs recent "explanation" that counsel believed that the deposition was taken *during* litigation is disingenuous.  The deposition transcript on its face states that it was being taken "PRESUIT" and identifies Plaintiffs as "potential plaintiffs" and Dr. Kaplan, Ocala Neurosurgical and Marion as "potential defendants."

Fed. R. Civ. P. 34(b) requires the responding party to provide a *written* response, and *Rule 26(b)(5)* requires a party withholding information on the basis of privilege to make the claim expressly and to describe the nature of the documents sufficiently to enable other parties to assess the applicability of the privilege. As a general rule, a responding party's failure to make a timely and specific objection to a discovery request waives any objection based on privilege. *See U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.* 30 F. Supp. 2d 1332, 1340 (M.D. Fla. 2007), 2007 U.S. Dist. LEXIS 75972, *citing Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D. Mass.1988).

In cases involving inadvertent disclosure of privileged communications, Florida applies standards that require the Court to assess the reasonableness of precautions taken to preserve the privilege. *Liberty Surplus, supra. at* 1336, *citing, Abamar Housing & Dev. v. Lisa Daly Lady Decor, Inc.*, 698 So.2d 276, 278-79 (Fla. 3d DCA 1997). A waiver of a privilege is not limited merely to the specific document that was disclosed but instead extends to all communications of the same subject matter. *Latele TV, C.A. v. Telemundo Commc'ns Grp.*, No. 12-22539, 2014 U.S. Dist. LEXIS 155356, at *28 (S.D. Fla. Nov. 3, 2014) (citing *QBE Ins. Corp. v. Jorda Enters.*, 286 F.R.D. 661, 666 (S.D. Fla. 2012)).

On July 17, 2018, Plaintiffs responded to Globus' First RFP and provided a privilege log two weeks later. Neither Plaintiffs' responses nor their privilege log claimed that any responsive documents were protected by Florida Statutes §766.106(5), §766.205(4) or §400.0233(5). In fact, on 10/25/18, Plaintiffs provided a Third Supplemental production in response to Globus' First RFP, which included Dr. Kaplan's pre-suit deposition. *See* Third Supplement at Ex. G. An amended response to Globus' First RFP was not provided and no statutory objections were made.

The Third Supplement simply included a chart of the documents being produced, which specifically identifies and separately lists the "Deposition of Barry Kaplan, M.D. dated January 13, 2017," bates stamped as RAMK_MSC000005 through RAMK_MSC000014. The deposition had a "miscellaneous" prefix as part of the bates stamp, which was different than the medical records being produced. The deposition transcript itself was not designated as "Confidential."

The cover page of the transcript states  in capital letters: "IN RE: THE PRESUIT MATTER OF." The caption identifies Winston and Vindra Ramkelawan as "Potential Plaintiffs" and Dr. Kaplan, Ocala Neurosurgical and Marion Surgery as "Potential Defendants" with the deposition being taken by the "Potential Plaintiffs."

On October 26, 2018, one day after Dr. Kaplan's deposition was produced, Globus' counsel sent Plaintiffs' counsel an email, which specifically referenced Dr. Kaplan's deposition transcript and requested any other depositions related to Plaintiffs' claims: "[**S**]**ince you have forwarded the <u>pre-suit deposition</u> transcript of Dr. Kaplan**, I would appreciate it if you would forward all other deposition transcripts related to Mr. Ramkelawan's claims against Dr. Kaplan, his practice, the Marion Surgery Center and the Life Care Center. I understand that at the very least the Ramkelawan's depositions were taken in the Life Care matter." (emphasis added) *See* Ex. H, Globus' email of October 26, 2018.

It was not until Plaintiffs sent an email on December 5, 2018, more than six (6) weeks after Plaintiffs had produced the deposition and Globus' email was sent, that Plaintiffs claimed, without explanation, that Dr. Kaplan's deposition was inadvertently disclosed and was subject

to a privilege pursuant to Florida Statute §766.106(5) and §766.205(4).[12] *See* Ex. I, Plaintiffs' email of December 5, 2018.

Florida courts consider the following factors in determining whether a privilege has been waived: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error. *Nova Southeastern Univ., Inc. v. Jacobson*, 25 So. 3d 82, 86 (Fla. 4th DCA 2009).

Applying the foregoing factors, Plaintiffs waived any privilege that the Florida pre-suit statutes may have afforded, not only for Dr. Kaplan's deposition but for all other presuit communications with third parties' counsel.  First, Plaintiffs intentionally produced the deposition but now claim that they believed it was taken during litigation.  Second, Plaintiffs have provided no explanation to date of any precautions that were taken to prevent the claimed "inadvertent disclosure." Third, the disclosure involved the deposition of the implanting surgeon, a critical witness.  Fourth, Plaintiffs failed to raise a claim of statutory privilege until almost five months after their initial responses. Fifth, Plaintiffs delayed six weeks before taking corrective measures.  Finally, Dr. Kaplan's deposition was read and analyzed by Globus' counsel upon receipt and shared not only with Globus' in house counsel but with Globus' experts.

---

[12] While Globus disagreed with Plaintiffs' claim of privilege and inadvertence, in accordance with Federal Rule of Civil Procedure 26 (b)(5)(B) and Paragraph 32 of the Confidentiality Agreement executed by the parties in this matter, Globus sequestered all copies of Dr. Kaplan's deposition. Globus requested that Plaintiffs provide the facts and legal authority in support of their position that Dr. Kaplan's deposition was subject to a privilege or protection, but they refused to do so, claiming Globus' request was premature.

Globus specifically brought the disclosure of Dr. Kaplan's deposition to Plaintiffs' attention the day after it was produced on October 25, 2018.  Nevertheless, Plaintiffs did not respond but waited until December 5, 2018 before they claimed the deposition was inadvertently disclosed. Only then, almost five (5) months after Plaintiffs' initial responses to Globus' First RFP, did Plaintiffs amend their responses and privilege log to claim for the first time that they had responsive documents which were protected as privileged by the Florida pre-suit statutes.

On February 20, 2019, during a meet and confer conference call, Globus' counsel specifically asked Plaintiffs' counsel why Dr. Kaplan's deposition was produced. Plaintiffs' counsel, Steven Nauman, claimed that he produced the deposition because he thought it was taken during the Kaplan Lawsuit.  He did not provide an explanation of why he believed that to be the case.

As noted above, Mr. Nauman's law firm represented Plaintiffs before and during the Kaplan Lawsuit and actually took Dr. Kaplan's deposition.  In addition, it is clear that Mr. Nauman did not even look at the deposition itself, which clearly states on its face that it was taken "Presuit" and identifies the parties as "potential" plaintiffs and defendants.  Seeing these descriptions on the deposition would have placed any person on notice that the deposition was taken presuit and not during litigation.  Therefore, Plaintiffs' counsel did not take reasonable precautions to prevent inadvertent disclosure of purported privileged documents.

Plaintiffs' failure to object timely in writing and their undue delay in taking corrective measures is strong evidence that counsel did not believe that the deposition was privileged in the first place and also that counsel failed to take adequate precautions to protect a claimed privilege. To the extent a privilege applies, the overriding interests of fairness and justice

support a finding here of waiver. Given the conduct of Plaintiffs' counsel, the Court should not relieve Plaintiffs of the waiver. *See Liberty Surplus, supra.* at 1341*, citing Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290 (D. Mass. 2000)*("it would be unjust to reward such gross negligence [of counsel] by providing relief from waiver. In fact, if the Court does not hold that a waiver has occurred under the egregious circumstances here presented, it might as well adopt the 'never waived' rule."). Plaintiffs' waiver extends not only to the Kaplan deposition but to all pre-suit documents and communications.

**C.    Communications Created By and Shared with Third Parties Are Not Protected as Work Product.**

Many of the privilege log documents were created by counsel for third parties, including Dr. Kaplan, Ocala Neurosurgical, Marion and Life Care and shared with Plaintiffs' counsel. *See* 12/11/18 Privilege Log #12-15, 18-19.  Those documents are not protected from discovery by the work product doctrine.  The work product doctrine does not shield from discovery documents created by third parties. *See Cherestal v. Sears Roebuck & Co.*, 2013 WL 5305671 (M.D. Fla. 2013), *citing Hunter's Ridge Golf Co., Inc. v. Georgia–Pacific Corp.,* 233 F.R.D. 678, 681 (M.D.Fla.2006)("Ordinarily, the work product doctrine does not shield from discovery documents created by third parties.")

Other documents were created by Plaintiffs' counsel but were shared with third parties' counsel. *See* 12/11/18 Privilege Log #8-11.  To the extent Plaintiffs' documents were arguably protected as work product, Plaintiffs waived that protection by sharing it with third parties' counsel.  *See SEC v. Herrera*, 324 F.R.D. 258, 262-63 (S.D. Fla. 2017).

**D.    Presuit Communications and Discovery are Relevant to Globus' Comparative Negligence/Fault Affirmative Defenses and May Contain Information Relevant to Bias, Prejudice and State of Mind**

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, Globus is entitled to obtain discovery regarding any non-privileged matter that is relevant to Plaintiffs' claims as well as Globus' defenses. The guiding principle is that the Federal Rules of Civil Procedure strongly favor full discovery whenever possible. Rule 26(b)(1) expressly provides that evidence need not be admissible to be discoverable.

Globus' affirmative defenses include comparative negligence and those defenses relating to injuries and damages that may have resulted from Plaintiffs' care and treatment before, during or after the May 2015 surgeries or that pre-existed those surgeries and resulted from either the October 2014 Motor Vehicle accident, treatment received after that accident or some other condition or event.

Plaintiffs' communications and discovery with third parties' counsel, and in particular the Plaintiffs' Notice of Intent to Initiate Litigation which included corroborating expert reports as well as the results of the third parties' discovery, are relevant to the claims and defenses in our case and may show bias or prejudice on the part of the medical providers who previously settled with Plaintiffs. Plaintiffs alleged in the Kaplan Complaint that Dr. Kaplan, his practice and the surgery center were negligent for failing to ascertain the stability of Plaintiff's cervical spine prior to the placement of the Secure-C.   Plaintiffs reasonably believed, and had an expert corroborate via an expert opinion, that Plaintiff's injuries were caused by the instability of his cervical spine, and not by a manufacturing defect.   Now, however, after accepting a significant settlement from the healthcare providers, Plaintiffs is taking an inconsistent position to support its manufacture defect claim and to counter Globus' affirmative defenses, by arguing that his spine was stable, but the device was defective.  Since the Secure-C is a PMA approved device, Plaintiffs cannot pursue a claim that the device should have been designed differently to

compensate for an unstable spine. Instead, Plaintiffs "manufacturing" defect claim is their only chance to obtain a recovery against Globus but it is simply an end run to avoid the MDA preemption.

Moreover, any proof that tends to expose a motivation to slant testimony one way or another satisfies the relevancy requirement is not only discoverable but may be admissible for purposes of impeachment concerning prior inconsistent statements, bias and prejudice. *See e.g., Jeld-Wen*, 2007 WL 1526649, at *2-3; *see also U.S. ex rel. RMP Capital Corp. v. Turner Const. Co.*, 2012 WL 6552063, *3 (M.D. Fla. Dec. 14, 2012) (settlement agreement discoverable to investigate possible bias or prejudice). Globus is entitled to learn what recitals of facts, concessions or admissions are contained in Plaintiffs' presuit communications with third parties to compare them with the deposition or trial testimony of key witnesses in this case.

Moreover, production of the presuit communications and discovery would not have a chilling effect on settlement negotiations since the settlement agreements with Dr. Kaplan, Ocala Neurosurgical, Marion Surgery and Life Care were executed some time ago and therefore their production would not be contrary to the public policy of encouraging settlement.

Pre-suit communications and discovery between Plaintiffs and third parties' counsel in the Kaplan and Life Care Lawsuits are not only relevant to Globus' comparative negligence/comparative fault affirmative defenses but may contain information which will prove bias, prejudice and state of mind of Plaintiffs and third parties. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, Globus is entitled to obtain those presuit communications and discovery and they should be produced.

## <u>LOCAL RULE 3.01(g) CERTIFICATE</u>

Pursuant to Rule 3.01(g) of the Local Rules of this Court, Globus' counsel conferred with Plaintiffs' counsel with respect to this motion, and Plaintiffs' counsel opposes the relief requested in the motion.

<div align="right">

COZEN O'CONNOR

    /s/ Denise B. Bense
James A. Gale / Fla. Bar. No. 371726
Email:  jgale@cozen.com
David M. Stahl / Fla. Bar. No. 84713
Email: dstahl@cozen.com
COZEN O'CONNOR
200 South Biscayne Blvd. Suite 3000
Miami, FL  33131
Tel: (305) 358-5001 Fax: (305) 358-3309

Denise Brinker Bense
(admitted *pro hac vice*)
Email: dbense@cozen.com
COZEN O'CONNOR
200 Four Falls Corporate Center, Suite 400
West Conshohocken, PA 19428
Tel: 610-832-8351 Fax: (877) 836-0584
***Attorneys for Defendants, Globus Medical,
Inc. and Globus Medical North America, Inc.***

</div>

## <u>CERTIFICATE OF SERVICE</u>

I, Denise Bense, Esquire, do hereby certify that the foregoing Motion to Compel has been filed electronically, served upon all counsel of record, and is available for viewing and downloading via the CM/ECF system of the United States District Court for the Middle District of Florida.

<div style="margin-left:40%">

By:    <u>/s/ Denise B. Bense</u>
James A. Gale / Fla. Bar. No. 371726
Email:  jgale@cozen.com
David M. Stahl / Fla Bar. No. 84713
Email: dstahl@cozen.com
COZEN O'CONNOR
200 South Biscayne Blvd. Suite 3000
Miami, FL  33131
Telephone: (305) 358-5001 Fax: (305) 358-3309
***Attorney for Defendants, Globus Medical, Inc. and Globus Medical North America, Inc.***

</div>

Dated:  March 4, 2019