# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**WINSTON RAMKELAWAN et al.,**

    Plaintiffs,

v.                                 **Case No: 5:18-cv-100-Oc-JSM-PRL**

**GLOBUS MEDICAL INC., et al.,**

    Defendants.

## ORDER

In this products liability action, Plaintiffs bring suit for personal injuries that Plaintiff Winston Ramkelawan allegedly sustained after Defendants' artificial disc (the "SECURE-C") was implanted into his spine, as well as related claims on behalf of Plaintiff's wife. (Doc. 36). This case is currently before the Court for consideration of two discovery motions: (1) Defendants' motion to compel pre-suit communications and discovery with third parties relating to two prior lawsuits (Doc. 76); and (2) Plaintiffs' motion to compel production of exemplars and motion for sanctions (Doc. 78). Both motions are ripe for decision and, for the reasons explained below, both motions are due to be denied.

    **I.**     **Defendants' Motion to Compel Pre-suit Communications and Discovery**

The first motion before the Court is Defendants' motion to compel pre-suit communications and discovery. This discovery dispute arises from Defendants' requests for certain pre-suit documents created in two lawsuits filed by Plaintiffs prior to filing the instant product liability action. The two suits included Plaintiff's allegations of medical malpractice against Dr. Barry Kaplan and his practice relating to the implantation of the SECURE-C, as well

as Plaintiff's allegations of nursing home negligence against Life Care Center of Ocala. Plaintiffs represent that both lawsuits were ultimately resolved.

During discovery in this case, Plaintiffs contend that, among other voluminous documents, they inadvertently disclosed the pre-suit deposition of Dr. Barry Kaplan, which is protected as privileged as pre-suit investigation materials under Florida law. Defendants, however, contend that they are entitled to Dr. Kaplan's deposition, as well as other pre-suit investigation documents in the two suits against Dr. Kaplan and Life Care Center of Ocala, and that the privilege asserted by Plaintiffs does not apply or was waived.

Plaintiffs have the initial burden of establishing that a privilege applies, after which Defendants have the burden of proving that the privilege was waived. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013); *Hershey Co. v. Cadiz*, Case No. 05-60999-civ, 2006 WL 8431510, at *2 (S.D. Fla. Aug. 24, 2006).

1. Privilege

Plaintiffs submit that the documents that Defendants seek are protected as pre-suit investigation material under Florida statute sections 400.0233(5), 766.106(5), and 766.205(4). Defendants argue that they are not an "opposing party" under the statutes, and that therefore the pre-suit investigation material is discoverable to them. However, both the plain language of the statutes and their application by Florida courts indicate that Defendants are an opposing party under those statutes.

From the language of the statute, it seems clear that the legislature contemplated that an opposing party blocked from discovering pre-suit materials need not have been an opposing party at the time the pre-suit materials were generated. The statutes state that such pre-suit materials are not "discoverable or admissible in *any civil action* for any purpose by the opposing party." Fla.

Stat. § 400.0233, 766.106, 766.205. The word *any* broadens the scope of the civil action in which the opposing party is not able to discover pre-suit materials. To reach Defendants' construction of the statutes would require the language to somehow limit the civil action to only those resulting from the pre-suit investigation, which the language in these statutes does not do.

This reading of the statute is bolstered by Florida and Middle District of Florida case law applying the statutes. In *Variety Children's Hosp. v. Boice*, a hospital was served with a notice of intent to initiate litigation by the plaintiff in a different litigation against a doctor. 27 So. 3d 788, 789 (Fla. 3d DCA 2010). On the same day, the same plaintiff requested pre-suit investigation materials from the hospital. *Id.* The plaintiff argued, and the court agreed, that the hospital was a non-party to the plaintiff's litigation. *Id.* at 789–90. However, because the hospital was going to be made a party in the plaintiff's lawsuit, the court applied section 766.205(4) to bar the plaintiff from discovering the hospital's pre-suit materials. *Id.* In the instant case, Defendants' argument is even weaker than the plaintiff's argument in *Boice* because in this case, Defendants are currently an opposing party to Plaintiffs—whereas in *Boice*, the hospital was only a future opposing party to the plaintiff.

Defendants rely on *Adventist Health* for the argument that Plaintiffs' presuit material is discoverable because it was prepared in a different case. *Adventist Health Sys./Sunbelt, Inc. v. Watkins*, 675 So. 2d 1051 (Fla. 5th DCA 1996). However, *Adventist Health* is distinguishable from the instant case and suggests that the material Defendants seek is not discoverable. *Id.* In that case, the court determined the relationship of the parties based on the patient referred to in the pre-suit material. *Id.* at 1052. Because the patient in the pre-suit material was not the plaintiff—and was not otherwise a party in the case—the hospital was not an opposing party to the holder of the privilege. *Id.* Simply put, section 766.106(5) "only protects the respective parties' work product

generated in their pre-suit screening process." *Id.* In the instant case, Plaintiffs are a party in the litigation and they are also the subject of the pre-suit investigation materials. That Plaintiffs settled with another party does not mean that their pre-suit material was generated in "an unrelated, separate medical malpractice case" under *Adventist Health*. *Id.*

This Court has also acknowledged that the statutes at issue protect pre-suit materials from discovery even where the pre-suit investigation resulted in a settlement with a party other than the current opposing party. *Bonilla v. United States*, Case No. 6:08-cv-1443, 2009 WL 10670016, at *2 (M.D. Fla. May 4, 2009) (reasoning that the settlement agreement itself would be discoverable, but not the "actual pre-suit 'statements, discussions, written documents, reports, or other work product'"). Thus, courts look at the ultimate relationship of the parties to determine whether they are "opposing" under the statutes, not the relationship of the parties at the time the pre-suit materials were created. With this understanding, the Court concludes that Defendants are an opposing party to Plaintiffs, and thus any material that Plaintiffs generated in its pre-suit investigation is privileged.

Defendants' remaining arguments on this point are unpersuasive. In arguing the significance of seeking the discovery of documents concerning completed settlements rather than documents concerning ongoing negotiations, Defendants rely upon a case which explicitly does not consider privilege. *U.S. v. Am. Soc. Of Composers, Authors, & Publishers*, Case No. civ. 13-95, 1996 WL 157523, at *1 (S.D.N.Y. Apr. 3, 1996). Also, Defendants cannot compel production under section 766.203(4) where the qualifications of the expert are not at issue. *See Morris v. Muniz*, 252 So. 3d 1143, 1158–59 (Fla. 2018).

2. Waiver

Defendants argue that even if the pre-suit investigation privilege applies to the documents they seek, Plaintiffs waived their privilege by producing the pre-suit deposition of Dr. Kaplan. First, Defendants suggest that Plaintiffs waived their privilege by failing to raise a timely and specific objection to Defendants' first request to produce. However, it is not clear that Defendants even asked for privileged material in their first request to produce. Furthermore, when Defendants did ask for privileged material in their October 26, 2018 email and in their November 5, 2018 third request to produce, it appears that Plaintiffs' December 11, 2018 response raised specific objections and was not untimely.[1]

Further, Plaintiffs assert that their disclosure of Dr. Kaplan's pre-suit deposition was inadvertent, while Defendants argue that the disclosure was voluntary and waived any privilege. Florida courts consider five factors in determining whether a disclosure was inadvertent: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error. *Lightbourne v. McCollum*, 969 So. 2d 326, 333 n.6 (Fla. 2007); *Gen. Motors Corp. v. McGee*, 837 So. 2d 1010, 1040 (Fla. 4th DCA 2002).

Although Plaintiffs concede that they could have taken more precautions to prevent inadvertent disclosure, the remaining factors weigh in Plaintiffs' favor. Indeed, the number of

---

[1] The instant case is easily distinguishable from Defendants' case law on untimeliness, as in both of Defendants' cited cases, the untimely objections were essentially raised for the first time when the matter was before the court. *U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1135, 1340 (M.D. Fla. 2007); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988).

inadvertent disclosures weighs strongly in favor of Plaintiffs, as they made only one inadvertent disclosure. The extent of the disclosure again weighs strongly in favor of Plaintiffs, as the disclosure consisted of a single 35-page document out of over 20,000 pages of documents that Plaintiffs produced. The delay and rectification factor overall weighs in Plaintiffs' favor, as their attorney swore in an affidavit that he emailed Defendants immediately upon learning the privileged nature of the document which had been disclosed.[2] *See Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 669 (Fla. 2d DCA 2003) ("Because the objections were made as soon as the confidential nature of the communication became apparent, Jenney did not waive the privilege."). And finally, the overriding interests of justice would be served by relieving Plaintiffs of their error because Defendants are not barred from discovering Plaintiffs' post-suit documents, which are generally considered to be more reliable than pre-suit documents. *See Cohen v. Dauphinee*, 739 So. 2d 68, 70–72 (Fla. 1999). Consideration of these factors weighs in favor of the conclusion that the disclosure was inadvertent and the privilege was not waived.

Furthermore, Defendants have not shown that the "sword and shield" doctrine applies here, as there is no indication that Plaintiffs raised a claim that will necessarily require proof by way of privileged documents. *See Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010). And even if Plaintiffs had waived their privilege, the waiver would not have extended to the remainder of Plaintiffs' pre-suit investigation material, as "an inadvertent disclosure 'no longer carries with it the cruel cost of subject-matter waiver.'" *Poertner v. Gillette Co.*, Doc. No. 6:12-cv-803, 2013 WL 12149369, at *2 (M.D. Fla. Mar. 12, 2013). The remainder of Defendants'

---

[2] Although Defendants argue that their Exhibit H demonstrates that Plaintiffs may have gotten earlier notice of the disclosure, Defendant's email does not substantiate Plaintiffs' knowledge of the disclosure without a response from Plaintiffs. Ultimately, the sworn statement by Plaintiffs' attorney that he "immediately emailed Globus' counsel advising of the inadvertent disclosure and requesting the return of the privileged material" is uncontroverted. (Doc. 77-5, ¶ 10).

arguments assume that the documents are not privileged, and thus are not applicable. Thus, Defendants have failed to meet its burden of proving that Plaintiffs waived any privilege over the sought discovery. Consequently, Defendant's motion to compel pre-suit communications and discovery (Doc. 76) is due to be denied.

## II. Plaintiff's Motion To Compel Exemplars

Turning to the second pending discovery motion, Plaintiffs have moved to compel the production of exemplars of the subject "SECURE-C" cervical disk device. (Doc. 78). Specifically, Plaintiffs have moved to compel a SECURE-C Demo Kit, an exemplar SECURE-C of the same size as the subject SECURE-C, and an exemplar assembly block for the same size as the subject SECURE-C. (Doc. 78). Further, Plaintiffs concede that, during a meet and confer, Defendants recently offered that Plaintiffs could inspect an assembly block at Defendants' expert's offices, and the core and endplate assembly could be purchased for the list price of $10,000. Plaintiffs describe the price as "astronomical," and request that the Court compel Defendants to produce the exemplars for what it costs to actually manufacture the SECURE-C.

Fed. R. Civ. P. 34 governs discovery regarding tangible things. Under Rule 34(a)(1), the Rule contemplates requests "to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things." Rule 34 does not address the cost which should be charged for the production of a tangible thing or exemplar.

Here, although Defendants contend that Plaintiffs have failed to demonstrate good cause for the discovery of the requested exemplars, there is apparently no dispute that Defendants have offered to make exemplars available for purchase and inspection pursuant to Rule 34. Indeed, Defendants state that Plaintiffs' experts have already inspected, measured, photographed and CT scanned the subject Core, Inferior Endplate and Superior Endplate on three separate occasions, as

well as performed a non-destructive test on the surface of the subject Core with a Fourier Transform Infrared spectrometer. (Doc. 79, p. 7). And, via email dated March 18, 2019, counsel for Defendants agreed "in the spirit of compromise," to provide exemplars "of the core (either a core from the same lot as the subject core which is expired or a core of the same size from another lot) and an endplate assembly of the same size as the subject endplate assembly," subject to several conditions. (Doc. 79-1). The conditions included that Plaintiffs compensate Defendants for the cost, that the components be marked "NOT FOR HUMAN USE," that the parties agreed to make arrangements for the physical transfer and Plaintiffs would bear the cost of transfer, that Plaintiffs would produce documentation and any results of testing in a timely fashion and prior to their expert reports, and that the core and endplate assembly be returned to Defendants at the end of the litigation or be destroyed. (Doc. 79-1). Defendants further offered that, "[t]o the extent plaintiffs' experts want an opportunity to inspect an assembly block, Globus will agree to provide an assembly block for inspection at Exponent's offices in Philadelphia." (Doc. 79-1). Notably, Defendant does not constrain its offer to an inspection at the time of trial. There appears to be no dispute that Defendants are willing to produce exemplars for inspection as contemplated by Rule 34.

What Plaintiffs are specifically requesting in the instant motion, however, is not an inspection, but that Defendants be compelled to produce the exemplars "at cost" and with "reasonable transport costs." (Doc. 78). Plaintiffs offer no persuasive authority in support of this request. The cases cited by Plaintiffs in support of their motion, *Cannioto v. Louisville Ladder, Inc.* Case. No. 8:09-cv-1892-JSM-YBM (Doc. 36), and *Whynot v. Publix Supermarket, Inc.*, Case No. 2013-CA-007898-0, are easily distinguishable from this case, as they involve fairly ordinary products (ladders and shopping carts), as opposed to highly specialized medical devices. (Doc. 79-

3). Further, in the cases cited by Plaintiffs, the plaintiffs agreed to pay the retail price of the exemplar product. While the undersigned acknowledges (as Defendants apparently also do) that Rule 34 contemplates that Defendants make the subject device or exemplars available for inspection, there is simply no basis or authority for the Court to require Defendants to provide the exemplars for purchase at Plaintiffs' preferred price, or "at cost." Plaintiffs' motion to compel production of exemplars and motion for sanctions (Doc. 78) is due to be denied.

### III. Conclusion

Accordingly, upon due consideration, and for the reasons explained above, it is ordered that:

**(1)** Defendant's motion to compel pre-suit communications and discovery (Doc. 76) is **DENIED** in all respects;

**(2)** Plaintiff's motion to compel production of exemplars and motion for sanctions (Doc. 78) is **DENIED** in all respects; and

**(3)** If an inspection of the exemplars is requested by Plaintiffs, the parties are directed to work together in good faith to reach mutually agreeable terms and to complete such an inspection as contemplated by Rule 34.

**DONE** and **ORDERED** in Ocala, Florida on April 22, 2019.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties